IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERTO QUILES GONZALEZ,**       :<br>Petitioner,       :<br>v.       :<br>       :<br>**UNITED STATES OF AMERICA,**       :<br>Respondent.       :<br>       : | **CIVIL NO. 07-1797**<br>**CRIMINAL NO. 05-123-16** |

**MEMORANDUM OPINION & ORDER**

**RUFE, J.**                                                                                                         **August 20, 2007**

    Presently before the Court is Petitioner Roberto Gonzalez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255, in which he attempts to collaterally attack his guilty plea and sentence. The Petition presents the questions of whether and to what extent collateral-attack waivers in guilty-plea agreements are enforceable to preclude defendants from seeking habeas relief. The Government's Motion to Dismiss argues that Petitioner's claims are wholly precluded by a collateral-attack waiver to which he knowingly and voluntarily agreed in his guilty-plea agreement. Based on recent Third Circuit precedent, the Court cannot agree. Consequently, the Court has considered the substance of Petitioner's claims, but has ultimately determined that they are without merit.

**I. PROCEDURAL HISTORY**

    On February 10, 2006, Petitioner pleaded guilty to conspiracy to distribute more than one kilogram of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). The charges to which Petitioner pleaded guilty stemmed from his involvement in a sizable drug-dealing conspiracy operating in and around Allentown, Pennsylvania. Pursuant to his guilty plea, Petitioner read and signed a plea agreement in which he agreed that he would neither appeal nor present any

collateral challenge to his conviction or sentence, absent certain enumerated circumstances. By agreeing to the waiver provision, Petitioner "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to [the] prosecution." Under the provision, Petitioner would be permitted to present a challenge under only four circumstances: (1) if the Government appealed his sentence; (2) if his sentence on any count exceeded the statutory maximum for that count; (3) if the Court erroneously departed upward; or (4) if the Court imposed an unreasonable sentence above the range provided by the United States Sentencing Guidelines.

At Petitioner's plea hearing, the Court thoroughly reviewed this waiver with him, ensuring that he was agreeing to the provision knowingly and voluntarily.[1] Petitioner confirmed that he agreed to waive his rights. On June 28, 2006, the Court sentenced Petitioner to the mandatory minimum term of imprisonment: 120 months. Almost one year later, on June 6, 2007, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255 asserting three grounds for relief: (1) that his counsel provided ineffective assistance by failing to file an appeal, and by failing to perform adequately at his sentencing, change-of-plea hearing, and during pretrial discovery; (2) that his counsel wrongly advised him during plea negotiations, and wrongly induced him to enter into a plea agreement; and (3) a possible Apprendi violation. The Government responded to the Petition by filing a Motion to Dismiss, in which it argues that the Petitioner's claims should be dismissed based on the appeal and collateral-attack waiver, which, it argues, Petitioner entered knowingly and voluntarily. The Court is now ready to review the Petition and the Government's Motion.

---

[1] See N.T. Change of Plea Hr'g 2/10/06, at 18:10–19:16, 20:5–12.

## II.  DISCUSSION

**A.  Enforceability of Appeal and Collateral-Attack Waivers**

At least eleven of the United States Courts of Appeals, including the Third Circuit Court of Appeals, have held that appeal-waiver provisions in guilty-plea agreements are generally permissible and enforceable.[2]  This conclusion is based at least partially on the premise that "'[a] criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.'"[3]  In United States v. Khattak, the Third Circuit held that as long as the criminal defendant knowingly and voluntarily agrees to the waiver provision, the provision is valid, though it should be strictly construed.[4]  Even if the waiver is wholly valid, however, the preclusive effect of the waiver is not absolute.  The defendant may avoid an otherwise valid appeal waiver in the face of "an error amounting to a miscarriage of justice."[5]

While the Third Circuit still has not explicitly stated that collateral- attack waivers are enforceable, the court has recently indicated its willingness to apply the logic underlying Khattak to those waiver provisions.[6]  In the recent case of United States v. Shedrick, the court of appeals implicitly held that collateral-waiver provisions are generally enforceable unless their enforcement

---

[2] See United States v. Khattak, 273 F.3d 557, 558, 560–61 (3d Cir. 2001) (noting that ten other courts of appeals have upheld appeal waivers and, subsequently, upholding appeal waivers in the Third Circuit).

[3] Id. at 561 (quoting United States v. Mezzanatto, 513 U.S. 196, 201 (1995)).

[4] Id. at 562.

[5] Id.; see also id. at 563.

[6] See United States v. Shedrick, No. 04-2329, ___ F.3d ___, 2007 WL 2051032, at *5 (3d Cir. July 19, 2007); see also United States v. Akbar, 181 Fed. Appx. 283, 286–87 (3d Cir. 2006); United States v. Perry, 142 Fed. Appx. 610, 612 (3d Cir. 2005).  Additionally, at least five other circuit courts of appeals have upheld the enforceability of collateral-attack waivers.  See Johnson v. United States, No. 06-4475, 2007 WL 2033420, at *4 (D.N.J. July 10, 2007) (citing cases from the Fifth, Sixth, Seventh, Ninth, and Tenth Circuits).

would result in a miscarriage of justice.[7] In that case, a criminal defendant who pleaded guilty to being a felon in possession of a firearm signed a plea agreement that included a provision waiving his right to file a direct appeal or collaterally attack his conviction or sentence, other than in certain specified circumstances. After his original counsel failed to file a timely direct appeal, new counsel was appointed. New counsel filed a petition for collateral relief under 28 U.S.C. § 2255, which the district court denied. Subsequently, Shedrick filed a *pro se* petition for a certificate of appealability, which the Third Circuit granted in order to consider two ineffective-assistance-of-counsel claims.

In considering the appeal, the court acknowledged that Shedrick had agreed to a collateral-attack waiver when he pleaded guilty. Nonetheless, it decided to consider the merits of his ineffective-assistance-of-counsel claims because "[e]nforcing a collateral-attack waiver where constitutionally deficient lawyering prevented Shedrick from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice."[8] In deciding to exercise its jurisdiction to consider Shedrick's claims, the court noted that the standard miscarriage-of-justice inquiry was left open-ended in Khattak—that is, the Khattak court chose not to "earmark specific situations" in which appeal and collateral-attack waivers should be invalidated.[9] But immediately thereafter, the court referenced the Seventh Circuit's holding that "ineffective assistance of counsel qualifies as a miscarriage of justice sufficient to overcome a waiver-of-appeal

---

[7] See Shedrick, 2007 WL 2051032, at *5. This approach is in line with the approach established in Khattak for dealing with appeal-waiver provisions.

[8] Id. at *5.

[9] Khattak, 273 F.3d at 563. Instead, courts were to consider the factors identified in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), including: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (quoting Teeter, 257 F.3d at 25–26).

provision."[10] This reference, in conjunction with the court's conducting a merits analysis and in the absence of any further discussion of the miscarriage-of-justice standard, suggests that the Third Circuit is likely willing to adopt the Seventh Circuit's ineffective-assistance-constituting-miscarriage-of-justice reasoning in the context of collateral-attack waivers.

Essentially then, the court held that a collateral-attack waiver should not be enforced if a habeas petitioner has alleged potentially viable ineffective-assistance-of-counsel claims, since refusing to consider and to remedy such claims, if true, would result in a miscarriage of justice.[11] In the absence of a more clear dictate from the Third Circuit Court of Appeals concerning when a collateral-attack waiver precludes a defendant from pursuing claims of injustice through a habeas petition, this Court believes that district courts are obligated to consider at least some ineffective-assistance-of-counsel claims, even when the petitioner has agreed to a collateral-attack waiver.[12]

---

[10] See Shedrick, 2007 WL 2051032, at *10 n.6.

[11] See id. at *5.

[12] Before Shedrick, courts in this Circuit generally upheld plea-agreement provisions in which a criminal defendant waived his collateral-attack rights when the waiver provision was entered knowingly and voluntarily. See, e.g., Johnson, 2007 WL 2033420; Valentin v. United States, No. 06-1426, 2007 WL 1314888 (E.D. Pa. May 4, 2007); United States v. Miles, No. 05-658, 2007 WL 218755, at *6 (E.D. Pa. Jan. 26, 2007) (collecting district-court cases). Some courts, both in this Circuit and others, limited the applicability of collateral-attack waivers only when the defendant asserted that his counsel was ineffective in negotiating the waiver provision itself, since such error could result in an unknowing or involuntary assent to the provision. See, e.g., United States v. White, 307 F.3d 336, 343 (5th Cir. 2002); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1998); United States v. Lit, No. 07-903, 2007 WL 1725199, at *5 (E.D. Pa. June 12, 2007). This approach has some logical appeal: if the exception extends beyond ineffective assistance directly related to negotiating the waiver provision itself, then a convicted criminal defendant can circumvent a valid appeal waiver by alleging ineffective assistance of counsel on collateral attack, forcing the Government to expend the resources that it explicitly bargained to preserve. See White, 307 F.3d at 344. Unless counsel was ineffective in a way that renders the defendant's agreement to the waiver provision unknowing or involuntary, it would be prudent for the provision to effect its intended result: preclusion of a collateral attack.

But the Third Circuit has now suggested that the preclusive effect of collateral-attack waivers may be limited when a habeas petitioner alleges a claim that his counsel provided constitutionally ineffective assistance. See Shedrick, 2007 WL 2051032, at *5, *10 n.6. Since the Third Circuit has now spoken on this issue, the Court is required to follow its mandate.

**B. Effect of the Collateral-Attack Waiver in Petitioner's Plea Agreement**

Petitioner has asserted three claims in his Petition for Writ of Habeas Corpus. His first two claims involve assertions that his counsel provided ineffective assistance.[13] In these claims, he asserts that: (1) his counsel was ineffective by failing to file an appeal even though he requested that his counsel do so; (2) his counsel was ineffective during pretrial discovery, at his change-of-plea hearing, and at his sentencing; and (3) his counsel was ineffective by wrongly advising him to sign a plea agreement based "on the weight of the entire package drug conspiracy."[14] His only other claim is that there was a "possible Apprendi violation at the critical phase[s] of [his] sentencing and plea bargain."[15]

1. *The Ineffective-Assistance-of-Counsel Claims*

By its plain language, the collateral-attack waiver to which Petitioner agreed in his plea agreement precludes the assertion of ineffective-assistance claims on collateral attack, such as through a habeas petition. As discussed above, however, under Shedrick, the Court should not enforce a collateral-attack waiver in the face of allegations that constitutionally deficient lawyering may have prejudiced the habeas petitioner, including allegations that ineffective assistance may have caused the petitioner to enter a guilty plea that he did not understand or fully appreciate.[16] As a result—and in order to err on the side of caution in light of the uncertainty surrounding the

---

[13] It should be noted that, at Petitioner's change-of-plea hearing, the Court asked Petitioner whether he was satisfied with his counsel's representation. Petitioner's response was, "He's been magnificent." See N.T. Change of Plea Hr'g 2/10/06, at 9:22–24. Nonetheless, he now attempts to claim that his counsel was ineffective from the very beginning of his representation.

[14] Petr.'s Pet. for Writ of Habeas Corpus [Doc. # 636], at 6.

[15] Id.

[16] See Shedrick, 2007 WL 2051032, at *5.

enforceability of collateral-attack waivers in the face of ineffective-assistance claims—the Court will not strictly enforce the collateral-attack waiver in Petitioner's plea agreement to preclude consideration of his ineffective-assistance claims. Instead, the Court will consider the merits of Petitioner's claims as if he had not agreed to the collateral-attack waiver.

   2. *The Apprendi Claim*

In addition to his ineffective-assistance claims, Petitioner suggests that he was sentenced in violation of Apprendi v. New Jersey.[17] In Apprendi, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."[18] As such, when a habeas petitioner alleges a violation of the rule announced in Apprendi, he is inevitably alleging, at a minimum, that his sentence exceeds the statutory maximum. Since the terms of the waiver provision in Petitioner's plea agreement permit him to raise claims on appeal or collateral attack that his sentence on any count "exceeds the statutory maximum for that count as set forth in [the plea agreement]," the collateral-attack waiver does not preclude Petitioner from attempting to assert his final claim. Thus, the Court is compelled to consider the merit of this claim.

**C. Whether Petitioner's Claims Warrant Relief**

   1. *The Ineffective-Assistance-of-Counsel Claims*

Under the well-settled test set forth in Strickland v. Washington,[19] a habeas petitioner claiming ineffective assistance of counsel "must demonstrate that his attorney's performance was

---

[17] 530 U.S. 466 (2000).

[18] Id. at 490 (emphasis added).

[19] 466 U.S. 668, 687 (1984).

deficient and that he was prejudiced by the deficiency. . . . That is, he must prove that counsel's performance 'fell below an objective standard of reasonableness,' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[20] A petitioner cannot meet this burden, however, "based on vague and conclusory allegations [of error] . . . . Rather, he must set forth facts to support his contention."[21] A petitioner who fails to do so "is not entitled to habeas relief" on his unsupported claims of ineffective assistance.[22] Moreover, when a petitioner fails to identify facts supporting his contention of ineffective assistance, but instead offers nothing more than "bald assertions and conclusory allegations," he is not entitled to an evidentiary hearing under 28 U.S.C. § 2255.[23] In fact, holding an evidentiary hearing in light of such unsupported conclusory allegations is disfavored because doing so " will encourage meritless petitions burdening judicial resources."[24]

   In this case, Petitioner has failed to allege any intelligible and meaningful facts in support of his bald assertions that counsel was ineffective. First, he claims that his counsel was ineffective by failing to file a direct appeal, but alleges nothing more, such as what viable grounds exist for an appeal, how counsel could appeal his guilty plea and/or sentence in light of the appeal

---

[20] Shedrick, 2007 WL 2051032, at *5 (citing and quoting Strickland, 466 U.S. at 688, 694).

[21] Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (citing Mayberry v. Petsock, 821 F.2d 179, 187 (3d Cir.), cert denied, 484 U.S. 946 (1987)).

[22] Id.

[23] Id. at 301 ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.") ("We will not require an evidentiary hearing absent identification of some facts that support a contention of ineffectiveness . . . ."); see also id. at 298 n.12.

[24] Id.

waiver, or how and when he requested that his attorney file an appeal.[25] Next, he claims that counsel "failed" during pretrial discovery, at his change-of-plea hearing, and at his sentencing. Petitioner does not, however, identify *how* counsel failed, ignoring his obligation to allege facts in support of his claim of ineffectiveness. Finally, he claims that his counsel wrongly advised him to enter the plea agreement based "on the weight of the entire package drug conspiracy." Unfortunately, Petitioner does not explain the basis of this claim, or provide the Court with a clear understanding of the nature of the claim. Importantly, Petitioner has again failed to identify *how* counsel was ineffective—that is, Petitioner has not informed the Court how counsel's advice during plea negotiations fell below an objective standard of reasonableness. Ultimately, Petitioner is neither entitled to an evidentiary hearing nor the writ of habeas corpus based on his ineffective-assistance-of-counsel claims. He has completely failed to support his general allegations that his counsel provided deficient representation, and the Court is neither responsible for nor capable of making his claims for him. Without some factual basis, the Court cannot give his claims meaningful consideration. Under applicable Third Circuit precedent,[26] because Petitioner has failed to set forth facts in support of the contention that his counsel provided ineffective assistance, he is not entitled to relief. Accordingly, the Court will not grant him the writ on these claims.

---

[25] It appears that Petitioner attempted to attach to his original *pro se* motion a statement of allegations addressing his failure-to-file-an-appeal claim. See Doc. # 628, at 8–9. This filing was later supplanted by his filing on the Court's current standard form for § 2255 motions. When Petitioner complied with the Court's Order to re-file on the standard form in accordance with the Local Rules of Civil Procedure, he did not attach the same or a similar statement. Regardless, the statement attached to the original filing—which was incomplete and virtually unintelligible—adds nothing to the Court's analysis because it also fails to allege facts to support the contention that counsel was ineffective. For example, it fails to allege any viable grounds for appeal, especially in light of the appeal waiver. Likewise, it fails to allege when Petitioner asked his counsel to appeal; if he asked counsel to appeal well after the deadline to take an appeal had passed, then obviously there could be no ineffective assistance for failing to heed his request.

[26] See Zettlemoyer, 923 F.2d at 298.

2. *The Apprendi Claim*

Petitioner's only other claim is that there was a "possible Apprendi violation at the critical phase of sentencing and plea bargain." While the intricacies of this claim are unknown to the Court because Petitioner has, again, failed to discuss or to identify the exact error, it appears that Petitioner is asserting that his sentence was imposed in violation of Apprendi v. New Jersey.[27] As briefly discussed above, Apprendi requires that facts that increase the penalty for a crime above the statutory maximum be proven beyond a reasonable doubt and be determined by a jury.[28] But, as the Third Circuit has previously held, "[w]here the sentence imposed [is] under the applicable statutory maximum, Apprendi is not triggered."[29] Thus, if a criminal defendant admits in his guilty plea that he participated in a conspiracy that distributed a certain quantity of drugs, and he is later sentenced to a prison term that is less than the statutory maximum prison term for the offense to which he has pleaded guilty, then there can be no Apprendi violation.[30]

In this case, Petitioner admitted on the record—and the parties stipulated—that more than one, but less than three kilograms of heroin was distributed in furtherance of the conspiracy during the period of his participation.[31] Under 21 U.S.C. § 841, a defendant who pleads guilty to

---

[27] 530 U.S. 466 (2000).

[28] Id. at 490. As noted above, the fact of a prior conviction is not subject to this requirement.

[29] United States v. Cartagena, 78 Fed. Appx. 796, 799 (3d Cir. 2003) (citing United States v. Williams, 235 F.3d 858 (3d Cir. 2000)) (not precedential); see also Williams, 235 F.3d at 863 ("[W]e hold that Apprendi is not applicable to Williams' sentence, because the sentence actually imposed (seven years and one month) was well under the original statutory maximum of 20 years.").

[30] See Cartagena, 78 Fed. Appx. at 799 ("Distribution of 100 grams or greater of heroin, to which Cartagena admitted in his plea, carries a maximum penalty of 40 years imprisonment. Cartagena was sentenced to a lesser amount." (internal citation omitted)).

[31] See N.T. Change of Plea Hr'g 2/10/07, at 25–27.

distributing "1 kilogram or more of a mixture or substance containing a detectable amount of heroin . . . shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."[32]  Therefore, Petitioner faced a maximum sentence of life in prison, and he was informed of this possibility during his change-of-plea hearing.[33]  Moreover, he acknowledged that he understood the penalties that he faced as a result of his guilty plea.[34]  At sentencing, however, the Court imposed a much more lenient sentence than the statutory maximum: Petitioner was sentenced to 120 months in prison, the mandatory minimum sentence for a violation of the statute under which he pleaded guilty.  Since Petitioner was sentenced to less than the statutory maximum for the crimes to which he pleaded guilty, there can be no Apprendi violation.[35]  Accordingly, Petitioner's final claim is without merit, and the Court will not grant Petitioner the relief that he seeks based on this claim.

### III. CONCLUSION

For the reasons outlined above, the Court will deny the Government's Motion to Dismiss, and, after considering Petitioner's claims, will also deny the Petition for Writ of Habeas Corpus, on grounds other than those argued in the Government's Motion.

Sometimes, when an individual entangles himself in the wrongdoing of a criminal conspiracy, the law exacts a harsh punishment for his participation in furtherance of the conspiracy's goals.  Such is the case for Mr. Gonzalez, whose low-level involvement in a massive drug-

---

[32] See 21 U.S.C. § 841(b)(1) (2006).

[33] N.T. Change of Plea Hr'g 2/10/06, at 24:9–11.

[34] Id. at 24:20–23.

[35] See Cartagena, 78 Fed. Appx. at 799.

distribution conspiracy has landed him in prison for a lengthy stay. But Petitioner's current plight was not imposed upon him arbitrarily. Upon review of the record, the Court is convinced that Petitioner knowingly and voluntarily pleaded guilty to the crimes for which he was sentenced, admitted his participation in furtherance of the drug conspiracy, and acknowledged his willingness to accept the resulting punishment. At his change-of-plea hearing, Petitioner admitted that during his participation in the drug conspiracy, at least one kilogram of heroin was distributed to buyers in the Allentown area.[36] Under 21 U.S.C. § 841(b)(1)(A), therefore, his involvement in the conspiracy carried with it a mandatory minimum sentence of ten years in prison, and a potential maximum sentence of life in prison. He was explicitly informed of these facts at his change-of-plea hearing.[37] Nonetheless, he pleaded guilty to the charged crimes.

At his sentencing, the Court confirmed that, due to a prior drug conviction in Puerto Rico, he was not eligible for a safety-valve departure downward from the mandatory minimum.[38] As the Court noted, the guideline range for imprisonment was less than the mandatory minimum, but "the Court ha[d] no discretion to not impose" the statutorily mandated minimum prison sentence.[39] The Court lamented its position: "I can tell you from what I know of Mr. Gonzalez's role in the particular drug ring, we don't think he should be held as accountable as the higher ups. We do understand his role to be that of a lower-level street dealer."[40] But in light of the mandatory

---

[36] See N.T. Change of Plea Hr'g 2/10/06, at 23–24, 25–26:11.

[37] Id. at 24.

[38] N.T. Sentencing 6/28/06, at 4–5.

[39] Id. at 6:15–17.

[40] Id. at 6:20–23.

minimum, the Court's only inquiry was whether it should impose the statutory minimum or something more.[41]  Considering the circumstances of Petitioner's case, the Court determined that "the mandatory minimum satisfie[d] the objectives of the [sentencing] statute . . . . [I]t is more than enough time to protect the public, punish this defendant and deter him and others from committing this offense."[42]  Accordingly, the Court sentenced Petitioner to the mandatory statutory minimum: 120 months in prison.

Thus, Petitioner finds himself in a position that he now wishes to elude, but cannot. He has no grounds on which to challenge his conviction (by guilty plea) or his sentence, both of which are valid under the applicable law.   The Court will not, therefore, disturb the status quo.

An appropriate Order follows.

---

[41] See id. at 7:4–8.

[42] Id. at 7.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERTO QUILES GONZALEZ,** : | |
| Petitioner, : | |
| v. : | **CIVIL NO. 07-1797** |
| : | **CRIMINAL NO. 05-123-16** |
| **UNITED STATES OF AMERICA,** : | |
| Respondent. : | |

## ORDER

**AND NOW**, this 20th day of August 2007, upon consideration of the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2255 [Doc. # 636], the Government's Motion to Dismiss the Petition [Doc. # 638], and the relevant legal authorities, it is hereby **ORDERED** that:

(1) the Government's Motion to Dismiss [Doc. # 638] is **DENIED**;

(2) the Petition for Writ of Habeas Corpus [Doc. # 636] is **DENIED** and **DISMISSED** without an evidentiary hearing;

(2) there is no probable cause to issue a certificate of appealability; and

(3) the Clerk of Court shall **CLOSE THIS CASE**.

It is so **ORDERED**.

                                    BY THE COURT:


                                    /s/ Cynthia M. Rufe
                                    **CYNTHIA M. RUFE, J.**